## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CRYSTAL SANCHEZ,

      Plaintiff,

v.                                    CIV 05-0485 WPL

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

### MEMORANDUM OPINION AND ORDER

Crystal Sanchez brought this action for judicial review of a decision by the Commissioner of Social Security, denying her claim for supplemental security income benefits (SSI). The matter is before me now on the administrative record (AR), Sanchez's motion and memorandum to reverse or remand, the Commissioner's response, and Sanchez's reply. For the reasons that follow, I will remand the matter for further proceedings.

### PROCEDURAL BACKGROUND

Sanchez applied for SSI in 1999. (AR 14.) An ALJ determined that she was not eligible for benefits through August 1999 because of excess income, but could be eligible for benefits as of September 1, 1999. *Id.* at 123-24. Her application was subsequently denied initially, on reconsideration, and after an administrative hearing before a second ALJ. *Id.* at 14. The Appeals Council vacated the second ALJ's decision and remanded for further proceedings. *Id.* at 147. After a new hearing, a third ALJ determined that Sanchez retained the residual functional capacity to perform simple, repetitive, unskilled, light work; to lift 20 pounds occasionally and 10 pounds frequently; and to sit, stand, and walk 6 hours in an 8-hour workday "with sit and stand option." The

ALJ concluded that Sanchez could not perform her past relevant work, but based on the testimony of a vocational expert, she could perform a significant number of jobs in the national economy. Accordingly, the ALJ found that Sanchez was not disabled. *Id.* at 22. The Appeals Council denied review. *Id.* at 7.

Between the decisions of the second and third ALJs, Sanchez filed another application for SSI, which was granted due to mental impairments as of April 1, 2002.[1] *Id.* at 14, 149. Thus, the period at issue in this case is September 1, 1999 to March 31, 2002.

## FACTUAL BACKGROUND

Sanchez was born in 1964 and attended school up to the ninth grade. *Id.* at 48. Her work history includes jobs as a traffic-control flagger, cashier, and cook. *Id.* at 15, 49-51, 61. She has a history of substance abuse, hepatitis C, back and knee pain, gastrointestinal problems, and mental disorders. *Id.* at 15, 548, 616. She argues before this Court that her gastrointestinal and mental impairments render her disabled.

### *Gastrointestinal Problems*

Sanchez's gastrointestinal problems started in 1996 and continued through the period at issue in this case. *Id.* at 330. She experienced abdominal pain, nausea, vomiting, constipation, bleeding, and weight loss. *Id.* at 249, 265, 330. Sanchez underwent several tests, which did not clearly reveal the cause of her problems. *Id.* at 232, 274, 321, 324, 325, 328, 366. She was variously diagnosed with anorexia nervosa, esophogitis, gastritis, irritable bowel syndrome, and stress. *Id.* at 321, 325, 348, 412.

---

[1] According to the third ALJ, the disabling mental impairments were anxiety and personality disorders. (AR 47.)

In February 2002, Sanchez was admitted to a hospital, complaining of abdominal discomfort and weight loss for the last year. *Id.* at 147. Hospital records state that she was emaciated and cachectic upon admission and that she had inflammatory changes in her small bowel that were consistent with ileus.[2] Her discharge diagnosis was possible inflammatory bowel disease, but further testing was planned. *Id.* By May 2002, Sanchez's weight was down to 89 pounds, although she was 66 inches tall. *Id.*

In August 2002, Sanchez underwent emergency surgery, including a right colectomy with extended ileectomy.[3] *Id.* at 436, 464. Her discharge diagnoses included small bowel obstruction, severe malnutrition, and "[i]nflammatory bowel disease, ulcerative colitis vs. Crohn's." *Id.* at 437. Since this surgery, Sanchez has been on medication for Crohn's Disease, has gained weight, and has experienced improvement in her gastrointestinal problems. *Id.* at 52, 548-50, 596.

### *Mental Problems*

Sanchez has been treated for and diagnosed with a myriad of mental disorders.

Dr. LaCourt performed a psychological evaluation of Sanchez in March 2001. *Id.* at 275. He found her to have normal attention, concentration, mood, speech flow, and thought content. *Id.* at 276. Her full-scale IQ was 70, placing her at the lower end of the borderline range of below-average intellectual functioning. *Id.* at 277. She performed poorly in mathematics, but she reported that she managed her own household finances. *Id.* at 276-77. She also reported no difficulties in

---

[2] "Cachectic" refers to someone suffering from "general weight loss and wasting occurring in the course of a chronic disease or emotional disturbance." STEDMAN'S MEDICAL DICTIONARY 265 (27th ed. 2000). "Ileus" refers to "obstruction of the bowel." *Id.* at 874.

[3] "Colectomy" means excision of a segment or all of the colon. STEDMAN'S MEDICAL DICTIONARY at 377. "Ileectomy" means removal of the longest portion of the small intestine. *Id.* at 873-74.

caring for her personal needs. *Id.* at 277. Dr. LaCourt diagnosed Sanchez with mathematics disorder, alcohol abuse "in sustained full remission (by unconfirmed self-report)," and borderline intellectual functioning. *Id.* at 278. He concluded that she had a moderately limited ability to understand and remember detailed or complex instructions and a mildly limited ability to follow very short and simple instructions, carry out instructions, work without supervision, and adapt to changes in the workplace. *Id.* at 284-85.

Upon review of Sanchez's file in April 2001, Dr. Gabaldon found her to be markedly limited in her ability to understand, remember, and carry out detailed instructions and moderately limited in her ability to maintain attention and concentration for extended periods, to get along with coworkers without distracting them or exhibiting behavioral extremes, to deal with change and ordinary hazards, to travel in unfamiliar places and use public transportation, and to set realistic goals and make plans independently of others. *Id.* at 295-96. Dr. Gabaldon found Sanchez not to be significantly limited in other respects. *Id.* He diagnosed a cognitive disorder and substance abuse in remission. *Id.* at 297. He also indicated that she may have an organic mental disorder and mental retardation. *Id.* at 299. He found no evidence of a thought or mood disorder. *Id.* at 297.[4]

Sanchez has also been diagnosed with post-traumatic stress disorder (PTSD), apparently resulting from physical and sexual abuse, from seeing her husband commit suicide, or from viewing the murdered body of her sister-in-law. *Id.* at 55-56, 71, 411, 423-24. Additionally, she has been treated for depression. *Id.* at 259.

---

[4] Although Sanchez asserts that the ALJ ignored Dr. Gabaldon's report, he did cite the report by its exhibit number. (AR 19, 295.)

## STANDARD OF REVIEW AND SEQUENTIAL EVALUATION PROCESS

In reviewing the ALJ's decision, I must determine whether he applied the correct legal standards and whether his factual findings are supported by substantial evidence in the record. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Id.* I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the ALJ. *See id.*

The Social Security Administration has promulgated a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920. At the first four steps, the claimant must show that she is not working at a substantial gainful activity, that she has an impairment that is severe enough to significantly limit her ability to do basic work activities, and either that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 or that she is unable to perform the work she has done in the past. At the fifth step, the Commissioner must show that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Barnhart*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## CONSULTATIVE EXAMINATION

Sanchez argues that the ALJ was required to obtain a consultative examination regarding her gastrointestinal problems because the Appeals Council's remand order required him to do so, because her attorney requested one, and because one was needed to evaluate her gastrointestinal problems.

In its remand order, the Appeals Council noted that Sanchez's February 2002 hospitalization occurred after the administrative hearing.  The Council also noted that in May 2002 Sanchez weighed only 89 pounds and that her doctor stated that she was too weak to work. (AR 147.) Based on this evidence, which was apparently not considered by the ALJ, the Appeals Council remanded the matter. *Id.* at 147-48.  The remand order provided that upon remand, the ALJ "will[] [o]btain additional evidence concerning the claimant's gastrointestinal impairment [which] may include, if warranted and available, a consultative internal medical examination . . . ." *Id.* at 148.

On remand, the ALJ obtained a consultative examination by Dr. Toner, who had also provided a consultative examination before the first administrative hearing and who does not appear to be an internal medicine specialist. *Id.* at 287, 534, 537.  Dr. Toner found nothing to indicate that Sanchez "would be unable to do things that would be considered normal for her age, size, and sex." *Id.* at 536. He acknowledged that he did not have any records regarding the nature of her "abdominal problems."[5]  *Id.*

At the hearing, Sanchez's attorney stated that he was "not very happy that Dr. Toner is the same person who saw her three years [ago] and doesn't address any of the issues and saw her again." Counsel objected to going forward without a consultative gastrointestinal examination. *Id.* at 47. The ALJ indicated that he would order another examination after the hearing if he felt he needed one. *Id.*  No additional consultative examination was ordered.

---

[5] Sanchez argues that Dr. Toner's report does not support the ALJ's finding that "it was noted that she was using cocaine when she was down to 80 pounds . . . ." (AR 19.)  Sanchez must have overlooked the notation in Dr. Toner's report that she told his assistant "that she had been using cocaine when she was down to 80 pounds."  (AR 535.)

Sanchez's argument that the ALJ violated the Appeals Council's remand order is not cognizable by this Court. I have jurisdiction only to review the Commissioner's final decision, which in this case is the second ALJ's decision. *See* 42 U.S.C. § 405(g); *Miller v. Barnhart*, No. 05-6248, 2006 WL 895503, at *4 (10th Cir. April 7, 2006) (unpublished); *Gallegos v. Apfel*, No. 97-2267, 1998 WL 166064, at *1 (10th Cir. April 10, 1998) (unpublished).

The ALJ has broad latitude in deciding whether to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). The Tenth Circuit has held that "the ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169.

Sanchez does not explain how a retrospective medical assessment conducted after the period at issue would be of material assistance. *See Miller*, 2006 WL 895503, at *5. When the Appeals Council issued its remand order, no ALJ had considered the evidence concerning Sanchez's February 2002 hospitalization, nor had a definitive diagnosis been made of Sanchez's condition. Less than a month after the Council's decision, Sanchez had the surgery described above and was diagnosed with a bowel obstruction and Crohn's Disease. The ALJ thus did not need to obtain a consultative examination to diagnose Sanchez's gastrointestinal problems. Moreover, the period at issue before the ALJ was September 1, 1999 to March 31, 2002. Because Sanchez's condition clearly improved after the surgery in August 2002, an opinion regarding her post-surgery functional limitations would not have been particularly useful. Therefore, the ALJ could have reasonably concluded that a consultative examination would not be of material assistance.

**LISTING OF IMPAIRMENTS**

Sanchez argues that she meets the listings for mental impairments.  There is evidence that she has an organic mental disorder, a personality disorder, an eating disorder, depression, mental retardation, PTSD, and substance addiction, all of which are included in the listing of impairments. The ALJ's entire analysis at step 3 reads as follows:

> The medical evidence discloses that Ms. Sanchez has a history of hepatitis C, gastrointestinal problems, low back pain, Crohn's disease, depression, and cognitive disorder, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(AR 16.)

This type of conclusory analysis has been condemned by the Tenth Circuit.  *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  In *Clifton*, the Circuit stated:

> In this case, the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment.  . . . .  Such a bare conclusion is beyond meaningful judicial review.

*Id.*  The same is true here.

A violation of *Clifton* is harmless when the ALJ's findings at the fourth or fifth step of the sequential process provide a proper basis for upholding the step-3 finding.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005).  One of the primary reasons for applying harmless error review is to avoid "unwarranted remands needlessly prolonging administrative proceedings." *Id.* at 730.  But harmless error analysis must be applied cautiously on judicial review of administrative decisions.  *Id.* at 733.

Here, as discussed below, the ALJ failed to evaluate a treating physician's opinion,

necessitating a remand.  Because harmless error analysis should be applied cautiously, because it is not clear that the ALJ's other findings supply a basis for the step-3 finding, and because the matter must be remanded in any event, it is appropriate to direct the ALJ to provide a proper step-3 analysis on remand.

### TREATING PHYSICIAN'S OPINION

Sanchez argues that the ALJ erred by ignoring the opinions of her treating physician, Dr. Gibson.  In May 2002, Dr. Gibson stated that Sanchez was under her care "for hepatitis C, failure to thrive & rheumatoid syndrome.  Because she is so weak she is unable to work."  (AR 420.)  In a letter to Sanchez's attorney that was apparently written in September 2002, Dr. Gibson also noted that Sanchez had suffered from progressive weakness and weight loss for 18 months and recounted some of the medical procedures that she had undergone during that period.  Dr. Gibson further stated that Sanchez has "significant post-traumatic stress disorder."  She concluded, "My prognosis for Crystal returning to fulltime [sic] employment is poor especially in light of her psychiatric problems." *Id.* at 423-24.

An ALJ must give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's impairments if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); 20 C.F.R. § 416.927(d)(2).  If the treating physician's opinion fails to satisfy one of these conditions, the opinion is not entitled to controlling weight, but it is still entitled to deference and must be weighed using several factors. *See Langley*, 373 F.3d at 1119; 20 C.F.R. § 416.927(d)(2).

A treating physician's opinion is not entitled to controlling weight or deference unless it

qualifies as a "medical opinion." *See* 20 C.F.R. § 416.927(a)(2), (d). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* § 416.927(a)(2). An opinion on an issue reserved to the Commissioner, such as an opinion that the claimant is disabled, does not qualify as a "medical opinion" even if given by a treating physician. *See id.* § 416.927(e).

Relying principally on an unpublished decision, the Commissioner argues that Dr. Gibson's opinions were not "medical opinions" and were therefore not entitled to controlling weight. *See Balthrop v. Barnhart*, 116 F. App'x 929, 932 (10th Cir. 2004) (unpublished) (opinion that claimant was "totally disabled and unable to be gainfully employed" was not "medical opinion"). But the *Balthrop* Court noted that "even opinions on administrative issues reserved to the Commissioner are still evidence that cannot simply be disregarded." *Id.* at 932-33 (citing SSR 96-5p). In *Balthrop*, the ALJ discussed the non-medical opinion even though he ultimately rejected it. *Id.* at 932-33.

In this case, the ALJ did not even mention Dr. Gibson's opinion. This was a clear violation of the Commissioner's own directives. Social Security Ruling 96-5p states that "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and that the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." 1996 WL 374183, at *1. Further, "[f]or treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." *Id.* at *2. And finally, "[i]f the case record contains an opinion from a medical source on an issue reserved

to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3. None of these directives was followed here.

The Commissioner asserts that Dr. Gibson was not qualified to render an opinion regarding Sanchez's mental impairments because she is not a psychologist or psychiatrist. Although this might affect the weight given to the opinions, *see* 20 C.F.R. § 416.927(d)(5), it does not justify the ALJ's complete failure to discuss them.

The Commissioner also notes that Dr. Gibson's letter is undated. Assuming it was sent in September 2002, that would be approximately 5-to-6 months after the period at issue in this case. It is apparent from the context that the letter was written shortly after Sanchez's August 2002 surgery, and it has a "received" stamp of September 2002. The letter describes Sanchez's gastrointestinal problems for the past 18 months, and there is nothing in the record to indicate that Sanchez's condition relative to PTSD changed after March 2002. Therefore, the fact that the letter was written after the period at issue does not change my conclusion that the ALJ was required to evaluate it. *Cf. Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005) (unpublished) (rejecting Commissioner's argument that physician's records were irrelevant because they predated the period under review).

Even if the Commissioner's arguments were legally and factually supportable, "affirming the denial of benefits on the basis of such newly mounted efforts to discredit [Dr. Gibson's opinions] would violate the prohibition on post hoc justification of administrative action." *Id.* at 459 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004)). Because I cannot confidently say that no reasonable ALJ would have reached a favorable decision after properly evaluating Dr.

Gibson's opinions, this case must be remanded for compliance with SSR 96-5p.  *See id.* at 458-59

(remanding "because the ALJ's failure to mention [a physician] or his records *at all* clearly violates

the Commissioner's own directives").

Finally, I note that the ALJ also failed to address opinions in a Substance Abuse Evaluation

regarding the severity of Sanchez's mental impairments and their effect on her ability to work.  The

evaluation states that Sanchez exercises poor judgment and appears "incapable of functioning for any

length of time in a way that does not cause her significant distress."  It further states that Sanchez is

unlikely to be able to hold down a job for any significant period of time because of a complex pattern

of emotional and psychological dysfunction exacerbated by ongoing chemical dependency issues.

(AR 409, 412.)  On remand, the ALJ should expressly evaluate these opinions and state the

significance, if any, accorded to them and the reasons for their significance or non-significance.  *See*

*Ribar v. Barnhart*, 199 F. Supp. 2d 917, 921 (S.D. Iowa 2002); 20 C.F.R. § 416.913.

## CONCLUSION

Sanchez's motion to reverse or remand (Doc. 13) is granted in part.  This matter is remanded

to the Commissioner for proceedings consistent with this opinion.[6]

IT IS SO ORDERED.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

---

[6] Because I am remanding for reconsideration at earlier steps in the sequential evaluation process, I
find it unnecessary to address Sanchez's arguments regarding the ALJ's step-5 analysis.

Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,Tenth Circuit.

Donna L. MILLER, Plaintiff-Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant-Appellee.

No. 05-6248.

April 7, 2006.

**Background:** Claimant appealed order of Commissioner of Social Security Administration (SSA) denying disability benefits.

**Holdings:** The Court of Appeals, Michael R. Murphy, Circuit Judge, held that:

1(1) on remand from Appeals Council, ALJ was not precluded from making different step-two determination than previous ALJ had made;

2(2) ALJ did not fail to comply with remand order; and

3(3) ALJ's failure to obtain retrospective medical opinion was not breach of his duty to develop record.

Affirmed.

**[1] Social Security and Public Welfare 356A**
⬅➔**142.20**

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)1 Proceedings in General
                356Ak142.15 Decisions or Determination
                    356Ak142.20 k. Conclusiveness and Effect. Most Cited Cases
On remand of social security disability proceeding from Appeals Council, ALJ was not precluded, in light of another ALJ's prior step-two determination that claimant had significant impairment, from making step-two determination that claimant did not have significant impairment, where current ALJ advised claimant that he was not bound by prior decision, and claimant was warned that second ALJ considered medical evidence lacking, but made no effort to produce additional evidence. 20 C.F.R. § 404.977(b).

**[2] Social Security and Public Welfare 356A**
⬅➔**142.5**

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)1 Proceedings in General
                356Ak142.5 k. Hearing and Administrative Review. Most Cited Cases
ALJ, in failing to obtain additional testimony from medical and vocational experts at step two of social security disability determination, did not fail to comply with remand order from Appeals Council requiring additional testimony, inasmuch as remand order addressed step four, not step two, and Appeals Council found that third ALJ complied with its remand order.

**[3] Social Security and Public Welfare 356A**
⬅➔**142.5**

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)1 Proceedings in General
                356Ak142.5 k. Hearing and Administrative Review. Most Cited Cases
ALJ's failure to obtain retrospective medical opinion concerning social security disability claimant's depression was not breach of his duty to develop record in social security disability proceedings, where claimant did not explain how diagnosis undertaken ten years after alleged onset date would yield probative evidence, she conceded that she had nothing further to offer and that time had come to seek decision, and ALJ already had claimant's complete medical history, testimony from two previous hearings, and earlier evaluation.

Gregory L. Johnson, Ardmore, OK, for Plaintiff-Appellant.

Mary F. Lin, Richard A. Gilbert, Jr., Office of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

General Counsel Social Security Administration, Dallas, TX, for Defendant-Appellee.

Before LUCERO, EBEL, and MURPHY, Circuit Judges.

**ORDER AND JUDGMENT**[FN*]

MICHAEL R. MURPHY, Circuit Judge.

**\*1** Donna L. Miller appeals from an order affirming the Commissioner's decision that she is not entitled to social security disability insurance benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

**Background**

The lengthy history of Ms. Miller's disability claim begins with her October 24, 1996 application, in which she alleged disability since July 1, 1993. Ms. Miller, whose insured status expired September 30, 1995, listed her disabling condition as "nervous breakdown (1988-89)." Aplt.App. at 60. Accordingly, the evidence relevant to her claim pertains to her mental impairment after the alleged onset date and before the expiration of her insured status. *See Henrie v. U.S. Dep't of Health & Human Serv.,* 13 F.3d 359, 360 (10th Cir.1993).

Ms. Miller's medical records indicate that she was hospitalized from February 7 to March 15, 1989, for a single episode of major depression with psychotic features, apparently precipitated by marital and family-related stressors. She was discharged in improved condition with instructions to continue her psychiatric care and take her medication. Ms. Miller did not return to her previous job as a dishwasher in a restaurant, but she worked from July to September 1990 in a nursing home and, in 1993, was a self-employed cattle salesperson. From her 1989 discharge to her 1996 disability application, Ms. Miller received medical care for various physical problems, but was not seen again by a mental-health provider.[FN1]

In her social security case, an Administrative Law Judge (ALJ) held a hearing on May 7, 1998. A psychiatrist testified that the lack of "anything ongoing, recent" made an evaluation difficult and that she could determine whether Ms. Miller met a listing more objectively if the Commissioner ordered psychological testing. Aplt.App. at 215-16. On August 24, 1998, a psychologist evaluated Ms. Miller at the request of the Commissioner. The psychologist's report shows a diagnosis of recurrent major depression, with possible psychotic features; chronic pain syndrome; and anxiety disorder, primarily represented by social phobia. The psychologist also completed a mental residual functional capacity (RFC) assessment form, noting several moderate and marked limitations in her ability to perform work-related activities. Neither the report nor the RFC assessment indicated a continuity between the 1989 psychotic break and Ms. Miller's condition on the date of the evaluation.

Shortly afterwards, the ALJ denied Ms. Miller's application for benefits. Relying heavily on the psychologist's report of the consultative examination, the ALJ found that Ms. Miller had a severe depressive and anxiety disorder, but that she had the RFC to perform the physical and mental demands of her past relevant work as a dishwasher. The Commissioner, however, had not provided the report to Ms. Miller. Upon judicial review, the district court reversed the denial of benefits, holding that Ms. Miller's due process rights were violated by the Commissioner's failure to give her notice of the post-hearing report or a meaningful opportunity to rebut this evidence.

**\*2** A second ALJ then held a hearing on remand. Douglas Brady, a clinical consultative psychologist, testified that a fair inference from the medical record was that Ms. Miller needed intensive treatment in 1997. He also commented on the lack of records of psychological or psychiatric treatment during the time period relevant to her claim. Ms. Miller testified about her condition from 1997 through the date of the hearing.

In a decision dated July 26, 2002, the second ALJ found that Ms. Miller "had a mental difficulty that did significantly restrict her ability to do basic work activities," that she had the RFC for jobs with low to moderate stress, and that her past relevant work as a dishwasher was within this RFC. *Id.* at 269. Based on his findings, the ALJ concluded at step two of the sequential evaluation process that Ms. Miller had a significant impairment, but denied benefits at step four because she could perform her past relevant work.[FN2]

Ms. Miller appealed the denial and, in 2003, the Appeals Council determined that the second ALJ's decision was unsupported and insufficient. It therefore remanded the case, with specific directions to the ALJ to develop the record on remand by: (1) updating the record with reports from health care providers; (2) preparing a "new, longitudinal" RFC determination; (3) holding a supplemental hearing, with testimony from a vocational expert; (4) reconsidering claimant's

testimony; and (5) taking action necessary to complete the administrative record before issuing a new decision. *Id.* at 309.

A third ALJ was assigned to the case. He opened a hearing, informing claimant he was not bound by any prior decision in the case. The transcript shows that both the ALJ and Ms. Miller's attorney were focused on extending Ms. Miller's period of insurance eligibility and exploring the feasibility of Supplemental Security Income benefits. Concerning the medical records, the ALJ noted that the record didn't "have a lot of medical evidence up until the date last insured" and inquired if there would "be substantial medical evidence ... from 89 up to 94." Aplt.App. at 497-98. Ms. Miller's attorney responded that there was "a gap from- 89 forward.... That's basically when her medical drops off the chart." *Id.* at 497. He also stated that his client "understands the problems. That's where we're stuck. We go around in this case, around and around." *Id.* at 498. The attorney did not suggest that any additional evidence would be appropriate. A vocational expert was present, but after holding the discussion with Ms. Miller's attorney, the ALJ closed the hearing without calling for vocational testimony.

The ALJ continued the proceedings for sixty days. No additional evidence relevant to Ms. Miller's mental condition was produced after the hearing. Ms. Miller's attorney submitted a letter to the ALJ which stated: "Quite frankly, I have nothing further to offer on this claim and have so explained this to the claimant. As you can see, she is also at her end and simply requests that a decision from your office be issued." *Id.* at 335. The ALJ then issued the decision which is the subject of this appeal.

**\*3** In making his decision, the third ALJ reviewed essentially the same record available to the second ALJ. At step two of the evaluation process, the ALJ acknowledged that the record indicated that Ms. Miller had a severe mental impairment in 1989 and also at the time of her 1998 examination. He concluded, however, that there was no evidence concerning an impairment in 1995. On November 26, 2003, the ALJ denied Ms. Miller's application on the ground that she was not significantly limited in her ability to perform basic work-related activities at the relevant time and therefore not severely impaired.

On administrative appeal, the Appeals Council found that "the Administrative Law Judge complied with the remand order" and declined to assume jurisdiction. *Id.* at 235. The district court affirmed the Commissioner's

decision and this appeal followed.

## Legal Discussion

### Compliance with remand order

Ms. Miller's primary argument on appeal is that the ALJ's actions were inconsistent with the Appeals Council remand order. Ms. Miller does not assert that the ALJ's de novo sequential evaluation caused surprise, confusion, or prejudice. And she does not describe evidence that she would have presented if she had been given formal, explicit notice that the ALJ could revisit the earlier step-two determination. Instead, she attempts to make a legal argument by claiming that (1) in light of prior proceedings, the ALJ was precluded from making a step-two determination that she did not have a severe impairment; and (2) in accordance with the remand order, the ALJ should have obtained additional testimony from medical and vocational experts and conducted an analysis of the previous testimony from medical experts.

Social Security regulations provide that, in the event the Appeals Council orders a remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Preclusion principles, however, do not "bind the ALJ to his earlier decision. To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." *Campbell v. Bowen,* 822 F.2d 1518, 1522 (10th Cir.1987). This court has "decline[d] to constrain the ALJ in a manner not mandated by the regulations." *Id. See also Hamlin v. Barnhart,* 365 F.3d 1208, 1224 (10th Cir.2004) (stating that "[i]t was certainly within the ALJ's province, upon reexamining [claimant's] record [after Appeals Council remand], to revise his RFC category"); *Houston v. Sullivan,* 895 F.2d 1012, 1015 (5th Cir.1989) ( "Once the case was remanded to the ALJ to gather more information about the extent of [claimant's] disability, the ALJ was free to reevaluate the facts."). [FN3]

[1] Ms. Miller was advised of this rule at her hearing, when the ALJ announced that he was not bound by a prior decision. She was also warned that the ALJ considered the medical evidence lacking. Rather than making an effort to produce additional evidence or

suggest a cure for the obvious gap in the record, Ms. Miller's attorney simply conceded that the absence of evidence was problematic. On the facts of this case, the ALJ's change in the step two determination, standing alone, cannot constitute error.

**\*4** [2] Ms. Miller also argues that the order denying benefits should be reversed because the ALJ's actions were inconsistent with the Appeals Council remand order. Specifically, she asserts that the ALJ disregarded instructions to obtain additional testimony from medical and vocational experts. The order, however, did not address the second ALJ's step-two findings. In context, the instructions were designed to correct "errors of law affect[ing] the ALJ's residual functional capacity findings," made at step four. Aplt.App. at 307. In response to Ms. Miller's final administrative appeal, the Appeals Council found that the third ALJ complied with its remand order. Under these circumstances, it is appropriate to examine the Commissioner's final decision under our usual standards, rather than focusing on conformance with the particular terms of the remand order. *Cf.* 42 U.S.C. § 405(g) (stating that this court is limited to review of the Commissioner's final decision); 20 C.F.R. § 404.955(a) (stating that when the Appeals Council grants a claimant's request for review, the ALJ's decision does not become final).

### Substantial evidence and conformity with legal standards

This court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir.2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir.2003) (quotation omitted). The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. *Decker v. Chater,* 86 F.3d 953, 954 (10th Cir.1996).

Ms. Miller challenges the Commissioner's determination that she did not have a severe impairment at the relevant time. At step two, the claimant must prove that she has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a). "The step two severity determination is

based on medical factors alone...." *Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir.2003). Although step two requires only a "de minimis" showing of impairment, a "claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997) (citations omitted). To meet this burden, a claimant must furnish medical and other evidence to support her claim that the impairment prevents her from engaging in substantial gainful activity. *Bowen v. Yuckert,* 482 U.S. 137, 145-46 & n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

[3] Ms. Miller asserts that she carried her burden or, alternatively, she could have done so if the ALJ had developed the record with the testimony of an additional medical expert. The record contains no evidence that Ms. Miller was significantly impaired at the time her insured status expired. Thus we are brought to the question of whether the third ALJ's failure to obtain retrospective medical testimony opinion amounts to a breach of his duty to develop the record.

**\*5** The Commissioner "has broad latitude in ordering consultative examinations," but "where there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Hawkins v. Chater,* 113 F.3d 1162, 1166 (10th Cir.1997) (citations omitted). A "retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques." *Perez v. Chater,* 77 F.3d 41, 48 (2d Cir.1996) (concerning a treating physician's retrospective assessment).

The record before the ALJ, however, does not indicate that this exercise would have revealed "any useful information or that the physicians were willing to undertake such assessments." *Id.* Though Ms. Miller argues that she was entitled to the testimony of a medical expert, she does not explain how a diagnosis undertaken ten years after the alleged onset date would have yielded any probative evidence. Further, she conceded that she had nothing further to offer and that the time had come to seek a decision. *Cf. Hawkins,* 113 F.3d at 1167-68 (stating that, in the absence of a request from counsel, this court does not ordinarily "impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record").

The ALJ already had Ms. Miller's complete medical history, testimony from the two previous hearings, and the 1998 evaluation. Contrary to her contention, the ALJ adequately evaluated and discussed the record, including the 1998 evaluation. Once he decided that the record did not demonstrate a severe impairment, the ALJ acted within the "broad latitude" afforded the agency in declining to obtain further medical testimony. *See Hawkins,* 113 F.3d at 1166. For similar reasons, the ALJ was not required to take the testimony of a vocational expert before making his step two determination.

According Ms. Miller's social security claim careful consideration at every administrative and judicial level has led to unfortunate delay. We now conclude, however, that the Commissioner's final decision followed appropriate legal standards and was supported by substantial evidence. AFFIRMED.

FN* After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

FN1. On appeal, Ms. Miller emphasizes the record of an emergency room visit for abdominal pain in June 1996 contains a "diagnostic impression of "chest pain, poss[ible] anxiety." Aplt.App. at 133. This notation does not constitute a linkage between her episode of depression in 1989 and her later claim of a continuing mental problem.

FN2. Step one [of the process] requires a claimant to establish she is not engaged in substantial gainful activity. Step two requires the claimant to establish she has a medically severe impairment or combination of impairments. Step three asks whether any medically severe impairment, alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment. If listed, the impairment is conclusively presumed disabling. If unlisted, the claimant must establish at step four that her impairment prevents her from performing work she has previously performed. If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience. *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir.2005) (internal quotation marks and citations omitted).

FN3. Claimant's cited authority does not detract from the rule this court established in *Campbell.* The cases relied upon by Ms. Miller generally involve a remand from a *court,* not an administration agency. They discuss and apply the law of the case doctrine, which requires the administrative agency on remand to conform its further proceedings to the judicial decision. *Brachtel v. Apfel,* 132 F.3d 417, 420 (8th Cir.1997); *Ruiz v. Apfel,* 24 F.Supp.2d 1045, 1050 (C.D.Cal.1998); *Richardson v. Apfel,* 9 F.Supp.2d 666, 673 (N.D.Tex.1998); *Geracitano v. Callahan,* 979 F.Supp. 952, 957 (W.D.N.Y.1997). *See also Schonewolf v. Callahan,* 972 F.Supp. 277, 289 (D.N.J.1997) (noting the ALJ's failure to follow the Appeals Council remand order, but independently reviewing the adequacy of the ALJ's findings).

C.A.10 (Okla.),2006.

Miller v. Barnhart

Slip Copy, 2006 WL 895503 (C.A.10 (Okla.)), 110 Soc.Sec.Rep.Serv. 59

Briefs and Other Related Documents (Back to top)

• 2005 WL 3657903 (Appellate Brief) Reply Brief of Plaintiff-Appellant (Nov. 9, 2005) Original Image of this Document (PDF)

• 2005 WL 3516755 (Appellate Brief) Brief for Appellee (Nov. 2, 2005) Original Image of this Document (PDF)

• 05-6248 (Docket) (Aug. 4, 2005)

END OF DOCUMENT

Briefs and Other Related Documents
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

Rudy GALLEGOS, Plaintiff-Appellant,

v.

Kenneth S. APFEL, Commissioner, Social Security Administration,[FN*] Defendant-Appellee.

FN* Pursuant to Fed. R.App. P. 43(c), Kenneth S. Apfel is substituted for John J. Callahan, former Acting Commissioner of Social Security, as the defendant in this action.

No. 97-2267.

April 10, 1998.

Before BALDOCK, EBEL, and MURPHY, Circuit Judges.

ORDER AND JUDGMENT [FN**]

FN** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

*1 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Rudy Gallegos appeals from an order of the district court that affirmed the Commissioner's denial of his claim for social security disability and supplemental security income benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and affirm.

Plaintiff alleged a disability beginning on April 16, 1986, due to head, neck, and back injuries and a hearing loss suffered in a fall from scaffolding at work. Although he has a high school education, plaintiff is of borderline intelligence with a full-scale IQ of seventy-eight since his accident. His past work was heavy, unskilled work as a construction laborer and janitor. He was thirty-five years old at the time the administrative law judge (ALJ) issued her final decision on June 26, 1995.

Plaintiff's claim for benefits was denied initially and upon reconsideration. He requested a hearing before an ALJ, who also denied his claim. Upon review, the Appeals Council remanded the case for further development of the record. The ALJ conducted another hearing and again denied benefits. The Appeals Council denied review of the ALJ's second decision, making it the final decision of the Commissioner.

Plaintiff asserts on appeal that the ALJ erred: (1) by failing to obtain additional consultative examinations, as directed by the Appeals Council in its initial remand order; (2) in finding that plaintiff did not meet the listing for organic mental disorders, 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.02; (3) in relying on a hypothetical question to the vocational expert (VE) that did not include all of plaintiff's limitations; (4) in discrediting plaintiff's testimony as to the frequency and severity of his symptoms; and (5) in determining that plaintiff retained the residual functional capacity (RFC) for work. We review the Commissioner's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied. See Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289 (10th Cir.1995).

Plaintiff's challenge to the ALJ's adherence to the Appeals Council's remand order is not cognizable by this court. By statute, our jurisdiction extends only to the Commissioner's final decision, which in this case is the ALJ's second decision. See 42 U.S.C. § 405(g); see also Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). Plaintiff does not argue that the ALJ failed

to adhere to a legal requirement to obtain additional medical evidence in reaching her second, final decision, but only that the ALJ did not follow the Appeals Council's direction. Therefore, plaintiff's first issue is not within our jurisdiction.

**\*2** Plaintiff has not shown that the ALJ erred in deciding that he did not meet the listing for organic mental disorders, 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.02. The ALJ found that plaintiff met the "A" criteria of the listing, but not the "B" criteria. *See* II Appellant's App. at 32-34. Substantial evidence supports the ALJ's conclusion that plaintiff does not meet the "B" criteria of the listing because he suffers only "slight" restrictions of activities of daily living and "slight" difficulties in maintaining social functioning, he "seldom" suffers deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and he "never" suffers episodes of deterioration or decompensation in work or work-like settings. *Id.* at 33-34. We therefore find no error in the ALJ's conclusion that plaintiff does not meet the listing.

Plaintiff next argues that the ALJ erred in relying on the VE's response to a hypothetical question that did not include all of his alleged mental impairments. A hypothetical question need only include those impairments the ALJ accepts as true. *See Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990). The ALJ followed the correct procedure in rejecting plaintiff's claims of mental impairments other than dizziness with bending and stooping, occasional headaches, and susceptibility to stress. *See Cruse v. United States Dep't of Health & Human Servs.,* 49 F.3d 614, 617 (10th Cir.1995). Therefore, the ALJ did not err in relying on the VE's testimony that plaintiff can work in spite of these impairments.

Plaintiff also contends that the ALJ erred in discrediting his testimony as to the frequency and severity of his symptoms. "Credibility determinations are peculiarly the province of the [ALJ], and we will not upset such determinations when they are supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir.1990). The ALJ thoroughly discussed her reasons for discounting plaintiff's complaints in light of the medical evidence, *see* II Appellant's App. at 24-28, and we therefore will not disturb her conclusions. *Cf. Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995) (remanding where ALJ did not give reasons for his decision).

Finally, plaintiff contends that the ALJ erred in determining that he retained the RFC for work. He argues, again, that the ALJ did not obtain additional medical evidence required by the Appeals Council in its remand order, and also that the ALJ improperly discounted evidence from Goodwill Industries, where plaintiff worked briefly, that his capabilities were significantly limited. We disagree. We have already pointed out that plaintiff has not argued that the ALJ was legally obligated to obtain additional medical evidence on remand. In addition, it is apparent that the ALJ interpreted the report from Goodwill Industries differently than plaintiff. We have reviewed it and find no error in the ALJ's conclusion that Goodwill Industries found plaintiff unmotivated to work, not incapable of work.

**\*3** The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

C.A.10 (N.M.),1998.
Gallegos v. Apfel
141 F.3d 1184, 1998 WL 166064 (C.A.10 (N.M.))

Briefs and Other Related Documents (Back to top)

• 97-2267 (Docket) (Aug. 14, 1997)

END OF DOCUMENT

Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,Tenth Circuit.

Tracy K. BALTHROP, Plaintiff-Appellant,

v.

Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant-Appellee.

**No. 04-7008.**

Nov. 24, 2004.

**Background:** Claimant appealed from order by the United States District Court upholding the decision by the Commissioner of the Social Security Administration to deny disability insurance and supplemental security income benefits.

**Holdings:** The Court of Appeals, Harris L. Hartz, Circuit Judge, held that:

1(1) opinions of claimant's treating physicians were not entitled to controlling weight, and

3(2) substantial evidence supported Administrative Law Judge's (ALJ) rejection of significant functional limitation on claimant's use of his right hand.

Affirmed.

West Headnotes

**[1] Social Security and Public Welfare 356A**
🗝143.65

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)2 Evidence

356Ak143.30 Disability Claims, Evidence as to

356Ak143.65 k. Medical Evidence of Disability, Sufficiency. Most Cited Cases
Treating neurologist's opinion that claimant for disability insurance and supplemental security income benefits was totally disabled was not medical opinion, and thus was not entitled to controlling weight or given any special significance; opinion did not address any particular functional limitations associated with claimant's condition, rather, it extended beyond expertise of physician, since it required assessment of interrelated medical, educational, and vocational factors. 20 C.F.R. §§ 404.1527(a)(2), (e), 416.927(a)(2), (e).

**[2] Social Security and Public Welfare 356A**
🗝143.65

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)2 Evidence

356Ak143.30 Disability Claims, Evidence as to

356Ak143.65 k. Medical Evidence of Disability, Sufficiency. Most Cited Cases
Medical source statement prepared by osteopath, who treated wrist of claimant for disability insurance and supplemental security income benefits, which statement related not only to claimant's wrist restrictions but to other restrictions, including limiting claimant to sitting two hours of an eight-hour day, which would have precluded even sedentary work, was entitled to little weight; opinion was not based on clinical findings from osteopath's own treatment of claimant or on any documentation obtained from other medical sources, rather, as Administrative Law Judge (ALJ) reasonably determined, osteopath's opinion was based in large part upon claimant's subjective complaints, which ALJ did not find to be fully credible. 20 C.F.R. §§ 404.1527(d)(2, 3), 416.927(d)(2, 3).

**[3] Social Security and Public Welfare 356A**
🗝143.60

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)2 Evidence

356Ak143.30 Disability Claims, Evidence as to

356Ak143.60 k. Nature and Duration

of Impairment, Sufficiency. Most Cited Cases
Substantial evidence supported Administrative Law Judge's (ALJ) rejection of significant functional limitation on use of right hand by claimant for disability insurance and supplemental security income benefits, who had been found to have impairment limiting use of his left hand; medical records consistently reflected that claimant retained full strength and range of motion in his right hand, which remained capable of both gross and fine manipulation, and medical records were more corroborated than undercut by claimant's own description of his relevant physical activities at hearing, including opening doors, doing buttons and feeding himself.

**\*930** Atherine C. Taylor, Tulsa, OK, G.E. Saunders, Saunders & Saunders, Ada, OK, for Plaintiff-Appellant.

Cheryl R. Triplett, Office of the United States Attorney Eastern District of Oklahoma, Muskogee, OK, Christopher Carillo, Tina M. Waddell, Office of the General Counsel Social Security Administration, Michael McGaughran, Social Security Administration Office of the General Counsel, Dallas, TX, for Defendant-Appellee.

Before KELLY, HARTZ, and TYMKOVICH, Circuit Judges.

## ORDER AND JUDGMENT[FN\*]

> **FN\*** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

HARRIS L. HARTZ, Circuit Judge.
**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Tracy Balthrop appeals from a district court order upholding the Commissioner's decision to deny disability insurance and supplemental security income benefits. We affirm.

The administrative law judge (ALJ) found that Plaintiff "has the following impairments which are considered to be 'severe' under the Social Security Act and Regulations:  degenerative disc disease of the cervical and lumbar spine and degenerative joint disease of the left wrist and left knee."   App. tab 3 at 17.    The ALJ found that these impairments left Plaintiff with a residual functional capacity (RFC) to "lift and/or carry 10 pounds occasionally and five pounds frequently;  stand and/or walk two hours of an eight-hour workday;  and sit six hours of an eight-hour workday." *Id.* at 28.   In addition, the ALJ found that Plaintiff "can sit for 30 minutes at a time" and "is limited to only occasional handling (seizing, holding, and turning) with the non-dominant left hand but can finger with the left hand." *Id.* The ALJ then determined that, although Plaintiff could not return to his past work, he was still able to perform a significant number of jobs in the economy, such as the positions of cashier and surveillance systems monitor that a vocational expert had identified as consistent with the above RFC findings. Accordingly, the ALJ denied benefits at step five of the sequential evaluation process.  The Appeals Counsel denied review, making the ALJ's decision the final decision of the Commissioner.

"We review the Commissioner's decision to determine whether the correct legal standards were applied and whether the Commissioner's factual findings are supported by substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir.2004). But the scope of our review "is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal." **\*931***Berna v. Chater,* 101 F.3d 631, 632 (10th Cir.1996) . Here, Plaintiff has raised two issues:  whether the ALJ improperly disregarded the opinions of two of Plaintiff's treating physicians, and whether the ALJ erred in omitting from Plaintiff's RFC any limitation regarding his use of his right hand.

### Treating-Physician Opinions

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight." *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir.2003) (internal quotation marks omitted).   There are two qualifications, analyzed sequentially:
An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this

question is "no," then the inquiry at this stage is complete.    If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.   In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

**2   *Id.* (internal quotation marks and citations omitted).

If a medical opinion does not qualify for controlling weight, it is still entitled to deference and must be evaluated in light of several factors set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d).[FN1]   This evaluation may lead the ALJ to ascribe diminished weight to the opinion or reject it outright.   In any event, the ALJ must give "good reasons" for the decision "that are sufficiently specific to make clear to any subsequent reviewers the weight [given] to the treating source's medical opinions and the reason for that weight." *Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir.2004) (internal quotation marks omitted).   If the ALJ rejects the opinion, he or she must give "specific, legitimate reasons for doing so," which may not involve the ALJ's own "speculative inferences from medical reports."   *Id.* (internal quotation marks omitted).   The ALJ may reject a treating physician's medical opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (internal quotation marks omitted).

> FN1.  A summary of these considerations is provided in *Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir.1995):
> (1) the length of the treatment relationship and the frequency of examination;  (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;  (3) the degree to which the physician's opinion is supported by relevant evidence;  (4) consistency between the opinion and the record as a whole;  (5) whether or not the physician is a specialist in the area upon which an opinion is rendered;  and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Plaintiff argues that the ALJ improperly discounted opinions expressed by Dr. Stephen E. Smedlund, a neurologist, and Dr. Don Haworth, an osteopath.

[1] Doctor Smedlund saw Plaintiff from August 22 to October 3, 2001, on a referral for low back pain radiating to the left leg as well as a herniated disc at L2-3 and degenerative changes to the lumbar spine below that level.   Examination revealed a positive straight-leg-raising test;   and an MRI done on September 24, 2001, showed a "[l]eft paracentral disc herniation **932 at the level of L2/3 [that] ... encroaches into the left neural foramen," App. tab 3 at 208, though an EMG and nerve conduction study done on October 3 showed "no evidence for a lumbosacral radiculopathy producing axonal nerve injury," *id.* at 187.   In a letter written on October 3, Dr. Smedlund "recommend[ed] that [Plaintiff] be seen by a spine surgeon to address his herniated disc with a left lumbar radiculopathy," *id.* at 185, but said nothing about functional impairment.     The ALJ credited these reports of Dr. Smedlund.   The controversy here arises from the fact that also on October 3 Dr. Smedlund wrote this statement on a prescription pad under Plaintiff's name:  "The above patient of mine has a herniated lumbar disk and significant back pain.   He is totally disabled and unable to be gainfully employed at this time.   He needs a spine surgery consultation." *Id.* at 186.   Plaintiff argues that the ALJ improperly rejected this unequivocal statement regarding disability.

The ALJ discounted this conclusory statement.   The ALJ criticized the opinion as contradicted by Dr. Smedlund's "very own evaluation on that same date, as well as other medical evidence in the file." *Id.* at 22.  Plaintiff's challenge to this criticism may have merit.

But the ALJ also rejected Dr. Smedlund's opinion because "determinations of disability are reserved for the Commissioner." *Id.* Doctor Smedlund's opinion does not address any particular functional limitations associated with Plaintiff's condition.   There are no findings of any substance relating to such relevant capacities as the ability to sit, stand, walk, lift, and carry.   There is only the bald conclusion that Plaintiff is totally disabled.   Not only is that conclusion unhelpful because of its uncertain medical meaning, but also it extends beyond the expertise of a physician, since it requires an assessment of interrelated medical, educational, and vocational factors.   As the ALJ's comment indicates, the statement in question was not a "medical opinion," that is, it was not a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis

and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions," 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Rather, it was an opinion on an "issue[ ] reserved to the Commissioner," an "administrative finding [ ] ... dispositive of a case," *id.* §§ 404.1527(e), (e)(1), 416.927(e), (e)(1). All the requirements discussed earlier regarding how medical source opinions must be assessed apply only to *medical* opinions. *See id.* §§ 404.1527(d), 416.927(d). In contrast, the kind of extra-medical opinion involved here is "not give[n] any special significance" in the disability analysis. *Id.* §§ 404.1527(e)(3), 416.927(e)(3); *see* Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 ("even when offered by a treating source, [bald opinions regarding disability] can never be entitled to controlling weight or given any special significance").

**3** Plaintiff's objections to the handling of Dr. Smedlund's opinion-that the ALJ should have given it controlling weight or given specific legitimate reasons for not doing so in light of the factors set out in the regulations-necessarily assume that Dr. Smedlund stated a *medical* opinion. As we have seen, he did not. Thus, Plaintiff's objections are inapposite.

That said, we note that even opinions on administrative issues reserved to the Commissioner are still evidence that cannot simply be disregarded. *See* SSR 96-5p, **933** 1996 WL 374183, at *5. But that is not what happened here. The ALJ duly cited and discussed Dr. Smedlund's opinion. The ALJ just concluded that the relevant notes and tests did not require "such a pessimistic picture of Plaintiff's health." App. tab 3 at 22. That reflects an adequate consideration of the evidence in question.

[2] We turn now to Dr. Haworth. Plaintiff had a silicone implant in his left wrist and saw Dr. Haworth several times from March through May 2002 for treatment of wrist pain and possible silicone synovitus. The implant was removed in late April. The office records do not reflect any treatment for the degenerative disc problems discussed above.

Nevertheless, Dr. Haworth prepared a medical source statement for Plaintiff reporting restrictions relating not only to his wrist but also to his ability to walk, stand, and sit throughout the course of a workday. Of particular significance here are restrictions limiting Plaintiff to sitting only two hours out of an eight-hour day and requiring that he lie down during the day to manage pain. *See id.* at 215-16 (also noting Plaintiff

could walk or stand for less than an hour). Such restrictions would preclude even sedentary work. *See Ragland v. Shalala*, 992 F.2d 1056, 1058 (10th Cir.1993); SSR 96-9p, 1996 WL 374185, at *3; SSR 83-10, 1983 WL 31251, at *5.

The ALJ held that Dr. Haworth's opinion regarding these critical postural restrictions was not controlling and, indeed, was entitled to little weight. The ALJ correctly noted that there was no evidence to suggest that this opinion was based on clinical findings from Dr. Haworth's own treatment of Plaintiff or on any documentation obtained from other medical sources. In fact, Dr. Haworth's only mention of the condition underlying the postural limitations was an unexplained reference to "spinal stenosis" at the end of his medical source statement. App. tab 3 at 216. The ALJ reasonably determined that Dr. Haworth's opinion was "clearly based in large part upon the claimant's subjective complaints, which [the ALJ] d[id] not find to be fully credible," *id.* at 22, and Plaintiff does not challenge the ALJ's credibility analysis here. The record and applicable regulations support the ALJ's decision to deny Dr. Haworth's opinion controlling weight because it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The regulations also support the ALJ's decision to discount its persuasive weight because of the limited nature of the underlying treatment relationship and lack of supporting materials, *id.* §§ 404.1527(d)(2), (3), 416.927(d)(2), (3).

### RFC-ALJ's Assessment of Right Hand Function

**4** [3] Plaintiff contends that the ALJ erred by failing to recognize a substantial limitation on the use of Plaintiff's right hand. We disagree. The medical records consistently reflect that Plaintiff retains full strength and range of motion in his right hand, which remains capable of both gross (grasping) and fine manipulation. And the medical records are more corroborated than undercut by Plaintiff's own description of his relevant physical activities, at the hearing, *see* App. tab 3 at 275-77 (conceding he can open doors, do buttons, tie shoes, twist off bottle caps, brush teeth, comb hair, and feed himself), and in written daily activity summaries, *see id.* at 142-47 (August 2001 summary noting Plaintiff does household chores for himself **934** and even plays the guitar, depending on soreness in his *left* wrist), *see also id.* at 150 (February 2002 update noting no changes to daily activities). Substantial evidence supports the ALJ's

rejection of a significant functional limitation on Plaintiff's use of his right hand.

In sum, we must defer to the ALJ's assessment of the opinions offered by Dr. Smedlund and Dr. Haworth, and the record supports the ALJ's rejection of any substantial impairment associated with Plaintiff's right hand. As these are the only issues raised in this proceeding, the Commissioner's determination of nondisability and resultant denial of benefits must be upheld.

The judgment of the district court is AFFIRMED.

C.A.10 (Okla.),2004.
Balthrop v. Barnhart
116 Fed.Appx. 929, 2004 WL 2677697 (C.A.10 (Okla.)), 102 Soc.Sec.Rep.Serv. 55

Briefs and Other Related Documents (Back to top)

• 2004 WL 1180933 (Appellate Brief) Brief for Appellee Oral Argument is not Requested (Apr. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 3438019 (Appellate Brief) Brief for Appellee (Apr. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 3454716 (Appellate Brief) Appellant Tracy Balthrop's Brief (Mar. 23, 2004)
• 04-7008 (Docket) (Jan. 20, 2004)

END OF DOCUMENT

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,Tenth Circuit.

Jimmy D. LACKEY, Plaintiff-Appellant,

v.

Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant-Appellee.

**No. 04-7041.**

April 5, 2005.

**Background:** Claimant sought judicial review of a decision of the Commissioner of Social Security denying disability benefits. The United States District Court for the District of Oklahoma affirmed, and the claimant appealed.

**Holding:** The Court of Appeals, David M. Ebel, Circuit Judge, held that ALJ erred in failing to mention physician or his records at all.

Reversed and remanded.

West Headnotes

**Social Security and Public Welfare 356A** ☞**142.10**

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)1 Proceedings in General
                356Ak142.10 k. Findings and Conclusions. Most Cited Cases

**Social Security and Public Welfare 356A** ☞**149**

356A Social Security and Public Welfare
    356AII Federal Insurance Benefits in General
        356AII(C) Procedure
            356AII(C)3 Judicial Review
                356Ak149 k. Determination, Findings, and Judgment. Most Cited Cases

ALJ's failure to mention physician or his records at all violated the Commissioner of Social Security's own directives with regard to both medical opinions and judgments going beyond purely medical findings to reach issues reserved to the Commissioner, and that violation precluded meaningful review, thus warranting reversal and remand, even though the physician expressed his final opinions several months before the alleged onset date of claimant's total disability. 20 C.F.R. § 404.1527(a)(2), (e).

**\*455** Gregory L. Johnson, Ardmore, OK, for Plaintiff-Appellant.

Cheryl R. Triplett, Office of the United States Attorney, Muskogee, OK, Michelle M. Montemayor, Tina M. Waddell, Michael McGaughran, Office of the General Counsel, Dallas, TX, for Defendant-Appellee.

Before EBEL, BALDOCK, and KELLY, Circuit Judges.

**ORDER AND JUDGMENT**<sup>FN*</sup>

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

DAVID M. EBEL, Circuit Judge.

**\*\*1** After examining the briefs and appellate record,

this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Jimmy D. Lackey appeals from a district court order affirming the Commissioner's denial of his application for social security disability benefits. We examine the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence and adheres to applicable legal standards, though the scope of our review is limited to issues the plaintiff has preserved and presented on appeal. *Chambers v. Barnhart,* 389 F.3d 1139, 1142 (10th Cir.2004). Plaintiff raises one legal issue: whether the failure of the administrative law judge (ALJ) to address the records of an examining physician, Dr. Metcalf, requires reversal. **\*456** Adhering to the applicable regulations and circuit precedent, we hold that it does.

The ALJ found that plaintiff, now fifty-seven years old, suffered from both a severe physical impairment (chronic back pain from degenerative disk disease aggravated by injury) and a severe mental impairment (bipolar disorder). These precluded plaintiff's return to his past work, from which he had no transferable skills. The ALJ found that he did, however, have a residual functional capacity (RFC) for light work, excluding repetitive bending or twisting, close attention to detail, the exercise of independent judgment, and any more than minimal public contact. A vocational expert cited several jobs satisfying these restrictions, which the ALJ relied on to deny benefits at step five of the controlling analysis. *See, e.g., Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir.2005).

The ALJ noted that plaintiff's disability claim was facially supported by his treating physician, Dr. Rother, and his treating psychiatrist, Dr. Kula. Indeed, if accepted, Dr. Rother's assessment of plaintiff's physical limitations alone would negate the ALJ's light RFC determination and require a finding of disability.[FN1] *See* App. at 303-06. But the ALJ discounted Dr. Rother's assessment in part as being "inconsistent with the other substantial evidence in the record." *Id.* at 17. While this aspect of the ALJ's analysis is not directly challenged here, it is significant in that it underscores the corroborative importance of Dr. Metcalf's opinions as an examining physician. Thus, though Dr. Metcalf's opinions might not establish plaintiff's disability per se, they nevertheless

had two material roles to play in the analysis of this case. First, they are relevant, albeit not controlling, evidence of plaintiff's disability in their own right and second, they figure in the analysis of the weight to be accorded Dr. Rother's potentially dispositive treating-physician findings. We turn, then, to a consideration of Dr. Metcalf's records.

> FN1. Some limitations recognized in Dr. Rother's assessment would preclude work at any RFC. But even just considering his negation (through standing and lifting restrictions) of the light RFC found by the ALJ, the difference between a light and sedentary RFC here would have been dispositive of plaintiff's disability under the Medical-Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P., app. 2, § 201.10 (directing decision of "disabled" for sedentary individual closely approaching advanced age without transferable skills if less than full high school education), § 201.14 (same for high school graduate if education did "not provide for direct entry into skilled work," i.e., if education was not completed in recent past for entry into sedentary work, *id.,* § 201.00(g)).

**\*\*2** Dr. Metcalf examined plaintiff several times between July 1997 and October 1998. *See id.* 247-76. During this period, an MRI revealed lumbar disc bulges at L3-4 and L4-5, and a markedly degenerative disc space at the L5-S1 level. *See id.* at 244-46. Consistent with this condition, Dr. Metcalf noted limited mobility and pain associated with plaintiff's lower back preventing his return to work throughout this time. In his last report of October 28, 1998, Dr. Metcalf made it clear that this impairment was permanent. *See id.* at 250. Using workers' compensation terminology, he quantified the extent of the impairment in two ways: (1) "29% permanent impairment to the whole man due to the injury sustained to his lower back," broken down as "22% permanent impairment due to limited range of motion of the lumbar spine" and "7% permanent impairment due to the unoperated degenerative disk disease"; and (2) "100% permanent and total economic disability for the performance of ordinary manual labor or any job for which [plaintiff] is qualified by reason of education or past work experience." **\*457** *Id.* Earlier, when asked to rate plaintiff's capacity in terms more meaningful to social security disability generally-and more specifically relevant here-Dr. Metcalf indicated

plaintiff was capable of only sedentary, not light, work. *Id.* at 257.

Agency regulations reflected in our circuit precedent prescribe how medical opinions are to be evaluated. Unless a treating physician's opinion entitled to controlling weight is involved, 20 C.F.R. § 404.1527(d) directs the ALJ to "consider all of the [factors set out in § 404.1527(d)(1)-(6) ] in deciding the weight [to] give any medical opinion." If upon considering these factors the ALJ discounts a medical opinion, the ALJ must "provide specific, legitimate reasons for rejecting it." *Doyal v. Barnhart,* 331 F.3d 758, 764 (10th Cir.2003). As this regulatory directive applies to *any* medical opinion, it includes medical opinions of an examining physician like Dr. Metcalf. *See id.* Indeed, § 404.1527(d)(1) specifically gives added weight to medical sources that, rather than merely reviewing records, have examined the claimant.

Not all of a physician's opinions are "medical opinions," however. That term is reserved for "judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2). In contrast, judgments that go beyond purely medical findings to reach "issues reserved to the Commissioner"-such as the claimant's RFC, whether he meets or equals a listing at step three, application of vocational factors, and the ultimate question of disability-"are not medical opinions, as described in paragraph (a)(2) of this section." *Id.,* § 404.1527(e). *See* 65 Fed.Reg. 11866, 11868, 11870 (Mar. 7, 2000) ("amending [§ 404.1527(e) ] by adding an introductory paragraph to distinguish opinions on issues reserved to the Commissioner from medical opinions," and changing heading of regulation "from 'Evaluating medical opinions about your impairment(s) or disability' to 'Evaluating opinion evidence' to more accurately identify the content of th[is] section[ ]," since "the term 'medical opinion' means ... judgments about the nature and severity of an individual's impairments, but [§ 404.1527] address[es] other types of opinions too").

**3 This distinction is important. The agency "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(3); *see* Soc. Sec. Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996). Even then opinions of treating physicians "are never entitled to controlling weight or special significance" on such

issues. SSR 96-5p, 1996 WL 374183, at *2; *see* SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) (noting that for treating source opinion to be entitled to controlling weight, it "must be a 'medical opinion' " as defined "[u]nder 20 CFR 404.1527(a)"). More generally, the multi-factor evaluative scheme in § 404.5127(d) is directed at "[h]ow we weigh medical opinions" and, appropriate to that task, includes factors relating specifically to the nature of the medical source, *see* § 404.1527(d)(1), (2), (5). As § 404.1527(e) and SSR 96-5p pointedly distinguish and exclude medical opinions and discount the significance of an opinion's medical source, the analysis guided by § 404.1527(d) and our associated case law, *see, e.g.,* *Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir.2004), does not strictly apply.

Nevertheless, the ALJ must "evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions **458 from medical sources about issues reserved to the Commissioner." SSR 96-5p, at *3. Thus, while § 404.1527(e) and SSR 96-5p constrain the evaluative process under § 404.1527(d), the ALJ must still assess "the extent to which the opinion is supported by the record" and, in doing so, "must apply the *applicable* factors" from § 404.1527(d). SSR 96-5p, at *3 (emphasis added). In particular, when assessing the probative value of an opinion under § 404.1527(e), it remains "appropriate to consider the supportability of the opinion [*see* § 404.1527(d)(3) ] and its consistency with the record as a whole [*see* § 404.1527(d)(4) ]." SSR 96-5p, at *3.

Applying these principles to the ALJ's analysis of Dr. Metcalf's records leads us to conclude that this case must be reversed and remanded for further proceedings. Some of what Dr. Metcalf said in his reports, including his finding of 100% total disability for any job plaintiff is qualified to perform by education or past work experience, falls under the scope of § 404.1527(e). On the other hand, his underlying diagnosis of lumbar sprain associated with the MRI results, his findings of limited range of motion, and his prognosis that the impairment involved is permanent all appear to fit within the definition of medical opinion set out in § 404.1527(a)(2). In any event, we need not pause long over the different types of opinions here, because the ALJ's failure to mention Dr. Metcalf or his records *at all* clearly violates the Commissioner's own directives with regard to either § 404.1527(a)(2) or § 404.1527(e) opinions. "[W]hen, as here, an ALJ does not provide any explanation for rejecting medical

[source] evidence, we cannot meaningfully review the ALJ's determination.   Although we review the ALJ's decision for substantial evidence, we are not in a position to draw factual conclusions on behalf of the ALJ."   *Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir.2001) (citations and quotations omitted).

**\*\*4** The Commissioner argues that Dr. Metcalf's records are "irrelevant to the period [under] review," because he expressed his final opinions several months before the alleged onset date of plaintiff's total disability.   Aplee.  Br. at 11.[FN2]   No authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant and, indeed, our precedent is to the contrary.   *See Hamlin v. Barnhart,* 365 F.3d 1208, 1223 n. 15 (10th Cir.2004) (holding medical reports predating disability period at issue "are nonetheless part of [the claimant's] case record, and should have been considered by the ALJ").   And when, as here, a doctor reports that an impairment is permanent, the fact that the report precedes the designated disability period is of limited practical import.   The Commissioner also asserts several reasons why Dr. Metcalf's opinion should not be deemed controlling or compel a finding of disability.   But that is not the issue, as plaintiff does not-and need not-claim that Dr. Metcalf's **\*459** report is sufficient by itself to conclusively demonstrate his disability.   Rather, we are concerned with the necessarily incremental effect of the report on the aggregate assessment of the evidentiary record (and, in particular, on the evaluation of the potentially dispositive opinions of plaintiff's treating physician, Dr. Rother), which is a matter the ALJ must consider under the principles summarized above.   Our role is to ensure that the ALJ satisfies this institutional obligation.

FN2. The Commissioner notes that plaintiff was trying to work at this time and contends that this engagement in substantial gainful activity belies Dr. Metcalf's finding of disability.   Argument in this vein is undercut by the Commissioner's own record citations showing plaintiff's self-employment income at the time (under $3000 per year) to be considerably less than what is *presumptively insubstantial* for an employee under 20 C.F.R. § 404.1574(b), which (though not controlling) informs the analysis for self-employed claimants too, *see* 20 C.F.R. § 404.1575(a)(2).   Plaintiff's testimony regarding his effort to work at this time, that

he "tried [his] best" but "could not do it, physically or mentally," App. at 57, is certainly not indicative of a capacity for substantial gainful activity.   In sum, the record is simply too scant for anything but speculation about the nature and effect of plaintiff's attempt to work at the time of Dr. Metcalf's report.

Finally, even leaving aside the lack of factual and legal support for the Commissioner's arguments on appeal, affirming the denial of benefits on the basis of such newly-mounted efforts to discredit Dr. Metcalf's reports would violate the prohibition on post hoc justification of administrative action.   *See Robinson,* 366 F.3d at 1084-85.   Nor do we see "the right exceptional circumstance" here for a harmless error approach:   we cannot "confidently say that no reasonable administrative factfinder," properly considering the materials from Dr. Metcalf in conjunction with the rest of the record, "could have resolved [the case] in any other way" than the ALJ did by neglecting those materials.   *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir.2004).

The judgment of the district court is REVERSED and the cause is REMANDED with directions to remand, in turn, to the Commissioner for further administrative proceedings consistent with the principles discussed above.

C.A.10 (Okla.),2005.
Lackey v. Barnhart
127 Fed.Appx. 455, 2005 WL 758797 (C.A.10 (Okla.))

Briefs and Other Related Documents (Back to top)

• 2004 WL 2085057 (Appellate Brief) Reply Brief of Plaintiff-Appellant (Aug. 04, 2004) Original Image of this Document (PDF)
• 2004 WL 1750346 (Appellate Brief) Brief of Plaintiff-Appellant (Jun. 18, 2004) Original Image of this Document (PDF)
• 04-7041 (Docket) (May. 06, 2004)

END OF DOCUMENT